22-15323

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**PROGRESSIVE DEMOCRATS FOR SOCIAL JUSTICE, KRISTA HENNEMAN, CARLIE WARE,**

Plaintiffs-Appellants,

**v.**

**ROB BONTA, in his official capacity as Attorney General of the State of California,**

Defendant-Appellee.

On Appeal from the United States District Court
for the Northern District of California

No. 21-cv-3875
The Honorable Haywood S. Gilliam, Jr., Judge

### BRIEF OF APPELLEE

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK BECKINGTON
Supervising Deputy Attorney General
KEITH L. WURSTER
Deputy Attorney General
State Bar No. 198918
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7907
  Fax: (916) 324-8835
  Email:  Keith.Wurster@doj.ca.gov
*Attorneys for Defendant-Appellee*

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................. 1

Statement of Jurisdiction ............................................................. 2

Statement of Issues ...................................................................... 3

Statement of The Case ................................................................. 3

       A.    Background ...................................................................... 3

            1.    California's State and Local Governments, and Their Employment Oversight ....................... 3

            2.    Section 3205 and its History ................................ 9

       B.    Procedural History ....................................................... 14

Standard of Review ...................................................................... 18

Summary of The Argument ......................................................... 18

Argument ...................................................................................... 20

    I.     Section 3205 Does Not Violate the First Amendment .......... 20

       A.    Section 3205 Is Constitutional Under the *Curtis*, *Mitchell*, *Letter Carriers*, and *Broadrick* Line of Cases ............................................................................. 21

            1.    The State May Restrict the Solicitation of Political Contributions by Government Employees ......................................................... 21

            2.    Supreme Court Precedent Permits Legislatures to Apply Different Regulations to Different Types of Government Employees ......................................................... 25

            3.    Section 3205's Criminal Penalty Does Not Make the Law Unconstitutional ........................ 27

       B.    Section 3205 Is Constitutional Under the Applicable *Pickering* Balancing ................................... 28

i

# TABLE OF CONTENTS
## (continued)

Page

      1.    The State's Interests Outweigh the Limited Burden Section 3205 Places on Plaintiffs .......... 30

      2.    Plaintiffs' Contrary Arguments Are Incorrect ............................................................. 34

   C.    Heightened Scrutiny Does Not Apply, but Section 3205 Would Pass Such Scrutiny .................................. 37

      1.    Plaintiffs' Arguments that *Pickering* Does Not Apply, and that Some Other Heightened Scrutiny Test Applies, Are Incorrect ................. 37

      2.    The State's Different Treatment of State and Local Employees Is Justified and Supported in the Record ...................................................... 40

      3.    Plaintiffs' Arguments Are Unconvincing .......... 43

      4.    Section 3205 Would Pass "Close" Scrutiny ....... 51

II.    Section 3205 Does Not Violate the Equal Protection Clause ..................................................................... 53

Conclusion ....................................................................... 58

Statement of Related Cases ............................................. 59

Certificate of Compliance……………………………………..60

# TABLE OF AUTHORITIES

**Page**

CASES

*Arizona Dream Act Coal. v. Brewer*
757 F.3d 1053 (9th Cir. 2014) ................................................................... 56

*Bolger v. Youngs Drug Prod. Corp.*
463 U.S. 60 (1983) ..................................................................................... 45

*Broadrick v. Oklahoma*
413 U.S. 601 (1973) ... 21, 23, 24, 25, 26, 27, 37, 39, 40, 41, 51, 52, 54, 55

*Buckley v. Valeo*
424 U.S. 1 (1976) ................................................................................. 38, 39

*Citizens United v. FEC*
558 U.S. 310 (2010) ...................................................... 38, 39, 50, 51, 52

*Clements v. Fashing*
457 U.S. 957 (1982) ................................................................................... 55

*Connick v. Myers*
461 U.S. 138 (1983) ....................................................................... 32, 33, 51

*Ex parte Curtis*
106 U.S. 371 (1882) ..................................... 21, 22, 24, 26, 27, 39, 40, 41

*Elrod v. Burns*
427 U.S. 347 (1976) ............................................................................. 32, 33

*Garcetti v. Ceballos*
547 U.S. 410 (2006) ....................................................................... 29, 30, 37

*Harwin v. Goleta Water District*
953 F.2d 488 (9th Cir. 1991) ............................................................... 44, 45

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Kowalski v. Tesmer*
543 U.S. 125 (2004)................................................................... 36

*Lane v. Franks*
573 U.S. 228 (2014)............................................................ 28, 40

*McCutcheon v. FEC*
572 U.S. 185 (2014)................................................ 37, 38, 50, 51

*McGowan v. Maryland*
366 U.S. 420 (1961)................................................................... 57

*Minority Television Project, Inc. v. FCC*
676 F.3d 869 (9th Cir. 2012) ............................................. 43, 44

*Minority TV, Inc. v. FCC*
704 F.3d 1009 (9th Cir. 2012) ................................................... 44

*Minority TV Project, Inc. v. FCC*
736 F.3d 1192 (9th Cir. 2013) .............................. 44, 45, 46, 50

*Pickering v. Board of Education*
391 U.S. 563 (1968)................................. 16, 28, 29, 30, 34, 37, 39, 40, 58

*Plyer v. Doe*
457 U.S. 202 (1982)................................................................... 56

*Rutan v. Republican Party*
497 U.S. 62 (1990)..................................................................... 33

*Sandoval v. County of Sonoma*
912 F.3d 509 (9th Cir. 2018) ..................................................... 18

*Service Employees Int'l Union, etc. v. Fair Political Practices Com.*
955 F.2d 1312 (9th Cir. 1992) ............................................. 52, 53

## TABLE OF AUTHORITIES
### (continued)

Page

*Smith v. U.S. Civ. Serv. Comm'n*
   520 F.2d 731 (7th Cir. 1975) .................................................................... 55

*U.S. Civil Service Commission v. National Association of Letter
   Carriers, AFL-CIO*
   413 U.S. 548 (1973)...................... 21, 23-27, 30-32, 36, 37, 39, 50, 51, 52

*United Pub. Workers of Am. (C.I.O.) v. Mitchell*
   330 U.S. 75 (1947)................ 21, 22, 23, 24, 25, 26, 39, 42, 51, 52, 54, 55

*United States v. National Treasury Employees Union*
   513 U.S. 454 (1995).................................................................... 34, 35, 39

*Wallis v. Princess Cruises, Inc.*
   306 F.3d 827 (9th Cir. 2002) .................................................................... 18

*Wash. State Grange v. Wash. State Republican Party*
   552 U.S. 442 (2008).................................................................... 36

*Weinberger v. Wiesenfeld*
   420 U.S. 636 (1975).................................................................... 54

*Williams-Yulee v. Fla. Bar*
   575 U.S. 433 (2015).................................................................... 41

**STATUTES**

United States Code, Title 5, (Hatch Act of 1939) ...................... 13, 22, 26, 54

California Code of Regulations Title 2
   §§ 599.600-599.995 (2022) .................................................................... 45

v

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Government Code

§ 3201 ................................................................................ 30, 47
§ 3202 ................................................................................ 12, 14
§ 3202(a) ................................................................................. 10
§ 3205 ...........1-3, 9, 11, 14-21, 24-28, 30-31, 33-39, 41, 43, 45-53, 55-57
§ 3205(a) ................................................................................. 27
§ 3205(c) ........................................................................ 33, 34, 52
§ 3205(d) .......................................................................... 14, 27
§ 3207 ................................................................................ 47, 48
§§ 3512-3524 .............................................................................5
§ 19251 ................................................................................... 10
§ 19730-19734 .......................................................................... 10
§§ 19815-19999.7 ................................................................... 5, 45
§ 19990 ................................................................................ 4, 47

## CONSTITUTIONAL PROVISIONS

California Constitution

Article IV ...................................................................................3
Article V § 1 ...............................................................................4
Article VII §§ 2-3 ...................................................................... 45
Article XI § 3-5 ...........................................................................7
Article XI § 6 .............................................................................7
Article XI § 7 .............................................................................7

United States Constitution

First Amendment ..2, 3, 15-20, 23, 26, 28, 32-33, 36, 41, 44, 51-53, 57-58
Fifth Amendment ................................................................... 22, 54
Ninth Amendment .................................................................... 22
Tenth Amendment .................................................................... 22
Fourteenth Amendment ......................................................... 18, 54

## OTHER AUTHORITIES

Administrative Officer - https://gid.specialdistrict.org/ ................................9

vi

# TABLE OF AUTHORITIES
## (continued)

Page

CalHR, About CalHR – https://www.calhr.ca.gov/pages/about-calhr.aspx ...............................................................................5

CalHR, Appeals/Grievances Page – https://www.calhr.ca.gov/state-hr-professionals/Pages/appeals-and-grievances.aspx ...................................6

CalHR, Bargaining/Contracts Page – https://www.calhr.ca.gov/state-hr-professionals/pages/bargaining-contracts.aspx .........................................6

CalHR, Listing of CalHR Personnel Functions – https://www.calhr.ca.gov/state-hr-professionals/Pages/personnel-functions.aspx .........................................6

California Bill Analysis, S.B. 1308,1995-1996 Session (July 12, 1995) ................................................................................. 14

California State Personal Board, Message from the Executive Officer – www.spb.ca.gov/about/executive_officer.aspx ...................... 42

http://alpinecountyca.gov/137/Administration-Personnel .............................9

https://saclafco.saccounty.gov/ServiceProviders/Documents/atozlistings/sac_006828.pdf ...........................................................9

https://saclafco.saccounty.gov/ServiceProviders/SpecialDistricts/Pages/default.aspx ..................................................................8

https://saclafco.saccounty.gov/ServiceProviders/SpecialDistricts/Pages/ListingbyCategory.aspx ...............................................8

https://www.calhr.ca.gov/pmd ......................................................9

https://www.california-demographics.com/cities_by_population ................................................................................7

vii

## TABLE OF AUTHORITIES
### (continued)

**Page**

https://www.california-
demographics.com/counties_by_population ...............................................6

https://www.counties.org/general-information/county-structure-
0 ................................................................................................................7

Los Angeles County Department of Human Resources –
https://hr.lacounty.gov/about-hr/ ...............................................................8

Statistics, 135 Harv. L. Rev. 491 (2021) ...................................................... 46

**INTRODUCTION**

California has a significant and long-standing interest in preventing political patronage and protecting governmental employees from being forced or pressured into contributing to political campaigns by the implicit threat of workplace sanctions. California Government Code Section 3205 protects this interest by prohibiting local government employees from targeting their co-workers for campaign donations. Longstanding Supreme Court authority upholds the ability of government to place reasonable restraints on this type of activity, in order to prevent both the appearance and the presence of corruption, curb the potential for coercion and intimidation of government employees, and protect the constitutional rights of those employees.

California enacted the current version of Section 3205 and its related provisions as a narrow workplace restriction to prohibit limited political conduct by local agency employees. It did so to provide a universal rule for all such agencies that would prevent employees of cities, counties, and other local agencies from soliciting political contributions from persons known to be co-workers. Allowing such solicitations could lead to coercion out of fear that employment or advancement could be jeopardized, or that one would be ostracized, if a contribution was not made. Such coercion could also put

1

undue pressure on the solicited employees to contribute to candidates or political causes they do not support thereby imposing on their First Amendment freedom of association. The limitation imposes a small burden on other government employees who want to solicit donations, such as Plaintiffs, and compared to the importance of maintaining an efficient and coercion-free workplace, the limitation is amply justified under any applicable standard of review.

Plaintiffs acknowledge that California could have prohibited all state and local employees from soliciting political contributions from known co-workers. They challenge the constitutionality of Section 3205 only because it applies solely to local agency workers and not to state workers. But Supreme Court precedent permits such distinctions—and here there are good reasons for treating the two types of employees differently. The District Court correctly held that California's statute violates neither the First Amendment nor the Equal Protection Clause. This Court should affirm.

## STATEMENT OF JURISDICTION

Defendant agrees with Plaintiffs' Statement of Jurisdiction.

## STATEMENT OF ISSUES

Section 3205 of California's Government Code prohibits employees of local California agencies from targeting co-workers of the same agency for contributions to political campaigns. The issues presented on appeal are:

1. Whether the application of that prohibition to employees of local agencies violates the First Amendment because identical restrictions are not placed on employees of state agencies.

2. Whether, for the same reason, the prohibition violates the Equal Protection Clause.

## STATEMENT OF THE CASE

### A.   Background

#### 1.   California's State and Local Governments, and Their Employment Oversight

The State of California, like other states, operates at both the state and local level. The two levels of government differ greatly in their legal authority and formal and informal oversight mechanisms. Though each level of government relies on civil service employees, the management, oversight, and supervision of those employees are quite different.

***State Government.***  With few exceptions, California state agencies are subject to the plenary authority of the Legislature. *See* Cal. Const., art. IV.

3

Most such agencies are also subject to oversight by the Governor, the Chief Executive of the State. *See* Cal. Const., art. V, § 1.

The State employs approximately 370,000 civil servants. ER-135. These employees are governed by a series of statutes, rules, and regulations, including California Government Code Section 19990. ER-136-37. Section 19990 directs each department of the state to create regulations for their employees that identify specific conduct and activities that are inconsistent or incompatible with their employment or position within that department. *Id.* In addition to Section 19990, state employees are prohibited from using the workplace, work hours, state resources, or their position as a state employee to engage in partisan political fundraising. ER-137 (summarizing regulations that the Parties stipulated were imposed on all state workers).

By 1963 the State of California had a "well established civil service merit system" and due to this merit system the Legislature had placed "very few restrictions of the political activity of state employees." ER-119. At that time state civil service was overseen by the State Personnel Board ("SPB"),

which was created in 1934 "to administer the civil service system and ensure that state employment is based on merit and free of political patronage."[1]

In 1981 the California Department of Personnel Administration was created to centralize the personnel functions being performed by several state agencies and to administer those aspects of the State personnel system that had become subject to collective bargaining under the Ralph C. Dills Act that the SPB was handling.[2]

The responsibilities for issues related to State employee salaries and benefits, job classifications, civil rights, training, exams, recruitment and retention were transferred to the newly created California Department of Human Resources ("CalHR") in 2012.[3] CalHR provides leadership and guidance to departments to protect the civil rights of all state employees.[4] In addition, CalHR represents the Governor as the "employer" in issues involving employer-employee relations, including collective bargaining with

---

[1] *See* California State Personal Board, Message from the Executive Officer – htttp://www.spb.ca.gov/about/executive_officer.aspx (last visited Sep. 8, 2022).

[2] *See* CalHR, About CalHR – https://www.calhr.ca.gov/pages/about-calhr.aspx (last visited Sep. 8, 2022).

[3] *Id.; see also* Cal. Gov't Code §§ 19815-19999.7

[4] *See* Cal. Gov't Code §§ 3512-3524*; see also* CalHR, About CalHR – https://www.calhr.ca.gov/pages/about-calhr.aspx (last visited Sep. 8, 2022).

unions who represent the interest of state employee pursuant to the Ralph C. Dills Act.[5] CalHR also oversees the SPB functions of reviewing adverse actions taken against state employees and appeals from those actions.[6] In addition, state-employee unions provide support to state employees who have grievances for unfair actions.[7]

**_Local Governments._**  Local governments and their related agencies far exceed the number of state agencies, and exist in great variety. California has 58 counties, with populations ranging from very small (such as Alpine County, with a population of about 1,100) to very large (such as Los Angeles County, with more than 10 million).[8] California also has 482 cities and towns, ranging in size from small (such as Amador City, population

---

[5] Cal. Gov't Code§§ 3512-3524*; see also* CalHR, Bargaining/Contracts Page – https://www.calhr.ca.gov/state-hr-professionals/pages/bargaining-contracts.aspx (last visited Sep. 8, 2022)*.*

[6] *See* CalHR, Listing of CalHR Personnel Functions – https://www.calhr.ca.gov/state-hr-professionals/Pages/personnel-functions.aspx (last visited Sep. 8, 2022)

[7] *See* CalHR, Appeals/Grievances Page – https://www.calhr.ca.gov/state-hr-professionals/Pages/appeals-and-grievances.aspx (last visited Sep. 8, 2022)*.*

[8] *See* California Demographics by Cubit, listing California county data collected in 2020 – https://www.california-demographics.com/counties_by_population (last visited Sep. 8, 2022)

200), to large (such as Los Angeles, with its population of 3.8 million).[9]

The legal authorities by which these various governments govern themselves vary widely. Municipalities in California are either General Law counties or cities, subject to the plenary control of the State Legislature through the statutes in the Government Code, or are Charter Counties[10] and Cities[11], which set many of their own rules through charters approved by voters in that municipality. *See* Cal. Const., art. XI, §§ 3-5 and 7. One charter city, San Francisco, is a county as well; its governing body possesses the authority of both types of government. *See* Cal. Const., art. XI, § 6.

In addition, to these counties and cities, California has another category of local government: its 2,894 special districts. ER-135. Many of these special districts involve specialized areas of governance that receive little attention from the public or news organizations. These special districts include 39 different types of special districts, such as school, airport, air

---

[9] See, California Demographics by Cubit, listing California city data collected in 2020 – https://www.california-demographics.com/cities_by_population (last visited Sep. 8, 2022)

[10] Of the 58 counties in California, 44 are General Law Counties and 14 are Charter Counties – *see* https://www.counties.org/general-information/county-structure-0 (last visited Sep. 8, 2022)

[11] Of the 482 cities in California, 361 are General Law Cities, and 121 are Charter Cities, which include some of the more populous municipalities in California, such as Sacramento and Los Angeles. ER-135

pollution control, cemetery, drainage, fire, flood control and water, highway districts, hospital, and recreation and park. ER-135.[12]

Collectively, all of these local governments employ nearly 1,250,000 civil servants. ER-135. But—as one would expect given the variety of the local governments themselves—mechanisms for oversight of the agencies' employee relationships vary greatly. Some local agencies have highly formalized HR procedures, established by ordinance or resolution by the agency's governing body, and administered by professional HR teams.[13] Others —particularly smaller agencies—lack such regulations and mechanisms.[14] Most importantly, local governments have no statewide

---

[12] For example Sacramento County has over 100 special districts. *See* https://saclafco.saccounty.gov/ServiceProviders/SpecialDistricts/Pages/default.aspx (last visited Sep. 8, 2022). Such districts include the Sacramento Metropolitan Air Quality Management District, the Fair Oaks Cemetery District, the Sacramento-Yolo Mosquito and Vector Control District, Sacramento Area Sewer District, and Carmichael Recreation and Park District. *See* links to categories of special districts at https://saclafco.saccounty.gov/ServiceProviders/SpecialDistricts/Pages/ListingbyCategory.aspx (last visited on Sep. 8, 2022.)

[13] *See, e.g.*, Los Angeles County Department of Human Resources – https://hr.lacounty.gov/about-hr/ (last visited on September 8, 2022.); *see also* City of Los Angeles Civil Service Commission charged with making and enforcing Civil Service Rules and Personnel Department Policies – https://per.lacity.org/civil-service-commission.html (last visited on Sep. 8, 2022).

[14] For example, in Alpine County, the Board of Supervisors appoints the County Administrative Officer ("CAO") who acts as the Administrative

equivalent of the SPB and CalHR to perform oversight and management for all county, city, and special district employees in the state.[15] There is no uniform oversight of the personnel actions and discipline for the nearly 3,500 separate local agency employers or for their nearly 1,250,000 collective employees. ER-135-36. This lack of uniformity has led to varying levels of permissible political activity by local agency employees. ER-125.

### 2.    Section 3205 and its History

Section 3205 provides that:

> (a) An officer or employee of a local agency shall not, directly or indirectly, solicit a political contribution from an officer or employee of that agency, or from a person on an employment

---

Officer, Personnel Director, and Purchasing Agent of the County. The current CAO is also the County Director of Health & Human Services and she manages the County Personnel Department with an assistant and an administrative assistant – http://alpinecountyca.gov/137/Administration-Personnel (last visited on Sep. 8, 2022); *see also* Galt Irrigation District a special district that manages 34,000 acres and serves 11 customers (https://saclafco.saccounty.gov/ServiceProviders/Documents/atozlistings/sac_006828.pdf (last visited on Sep. 8, 2022)) outside of Galt. It is managed by one Administrative Officer - https://gid.specialdistrict.org/ (last visited on Sep. 8, 2022.)

[15] CalHR is responsible for the administration and management of the Merit System Services Program which requires counties that receive federal funds for Social Services and Child Support programs to use a merit personnel system for those program employees that includes employee protection from coercion for partisan political purposes. The merit personnel system is not required for all county employees and the program does not apply to the 482 cities or the 2,894 special districts – https://www.calhr.ca.gov/pmd (last visited Sep. 8, 2022.)

list of that agency, with knowledge that the person from whom the contribution is solicited is an officer or employee of that agency.

(b) A candidate for elective office of a local agency shall not, directly or indirectly, solicit a political contribution from an officer or employee of that agency, or from a person on an employment list of that agency, with knowledge that the person from whom the contribution is solicited is an officer or employee of that agency.

(c) This section shall not prohibit an officer or employee of a local agency, or a candidate for elective office in a local agency, from requesting political contributions from officers or employees of that agency if the solicitation is part of a solicitation made to a significant segment of the public which may include officers or employees of that local agency.

(d) Violation of this section is punishable as a misdemeanor. The district attorney shall have all authority to prosecute under this section.

(e) For purposes of this section, the term "contribution" shall have the same meaning as defined in Section 82015.

A "local agency" is defined as "a county, city, city and county, political subdivision, district other than a school district, or municipal corporation." *Id.* § 3202(a).

Section 3205 is the culmination of a series of statutes enacted and amended beginning in 1945 when the legislature targeted corruption in civil service ranks in state government with the enactment of Government Code Sections 19251 and 19730-19734. ER-119-20; ER-130-31. The restrictions

in those provisions included general prohibitions for state employees, but not local employees, against soliciting or receiving political contributions or political service from other state employees or candidates for state employment, or using state facilities to solicit or receive political contributions. ER-119; ER 130-31. In addition, state agencies were required, pursuant to Section 19251 and subject to the approval of the SPB, to prescribe activities that would be considered inconsistent, incompatible, or in conflict with employment by that agency. ER-120.

In 1962 the Legislature conducted a study and held hearings on the political activities of state employees and the restrictions placed on such activities. ER-119. The Legislature recognized that California had a well-established civil service merit system and as a result few restrictions had been placed on the political activities of state employees. *Id.* The findings of the study included concerns that the limitations on political activity within the civil service ranks varied widely in the county, city, and local agencies. ER-125-26. Some local areas, like Los Angeles County permitted almost no political activity, while others like the City of Los Angeles had no limits on the political activity of their employees. ER-125. Local agencies had difficulty in addressing these disparities on their own—Los Angeles

11

County's 1962 attempt to amend their charter to permit more political freedom for its employees was voted down. ER-125.

After the release of the study the Legislature enacted new statutes in 1963 to provide uniformity and balance to the political freedoms and restrictions placed on all civil servants throughout the state of California. Government Code Section 3202, a new provision, regulated local employees, providing, in relevant part that "[a]n officer or employee of a local agency shall not, directly or indirectly, solicit or receive political funds or contributions, knowingly, from other officers or employees of the local agency or from persons on the employment lists of the local agency." ER-113. And with respect to state employees, Government Code Section 19730, part of the above referenced 1945 legislation, was unchanged and continued to provide that "[a] State officer or employee shall not, directly or indirectly, solicit or receive, or be in any manner concerned in soliciting or receiving, any assessment, subscription, contribution, or political service, whether voluntary or involuntary, for any political purpose whatsoever," from any state employee or candidate for state employment. ER-130.

In 1976, the Legislature considered whether the restrictions in 3202 and 19730 were still necessary, or whether they could be relaxed in order to provide more political freedom to state and local public employees. ER-78;

ER-105. As originally proposed, Assembly Bill 4351 would have removed those restrictions on state and local agency employees from soliciting coworkers for political donations and allowed local agencies to establish their own rules on certain political conduct of their employees. ER-48-50. But concerns were raised about the continued need for state regulation at the local level. *See* ER-86; ER-104. The City of Los Angeles, for instance, expressed serious concerns about removing the statewide prohibition on local agency employees soliciting political contributions from their fellow employees, arguing that that prohibition was "very important as a protection for an employee from undue pressures, and as a protection from the patronage or spoils problems of the past." ER-104.

Employees of the state government, in contrast, were seen as enjoying other types of protection from such pressures. For instance, the SPB noted, then-existing provisions of the federal Hatch Act meant that state employees in federally funded positions would be subject to similar restrictions on political solicitations regardless of any additional provisions of state law. ER-98. And more broadly, as AB 4351's author noted, there were "precautions and protections so that persons in the [state] civil service couldn't very well retaliate or politicize the process." ER-105.

AB 4351 was amended to maintain the political solicitation ban on local agency employees but moved the language from Section 3202 to new Section 3205. ER-55-58; ER-62-63; ER-67-68. That amended measure was passed by the Legislature and signed into law by the Governor. ER-36-37; ER-42-44. The result was that specific prohibitions on governmental employees soliciting coworkers in their agencies for contributions applied to employees of local governments but not of the state government.

Section 3205 was further amended in 1995, reorganizing the text into subparagraphs and adding a provision making a violation of the statute punishable as a misdemeanor. ER 40-41; *see also* Cal. Gov't Code § 3205(d). When amending the statute in 1995, the Legislature characterized Section 3205 as protection for public employees from individual coercion, because "neither [governmental] employees nor officers should be coerced into contributions for fear that employment may be in jeopardy if they do not contribute." Cal. Bill Analysis, S.B. 1308, 1995-1996 Session (July 12, 1995).

### B.  Procedural History

The complaint in this case was filed by Progressive Democrats for Social Justice, a Santa Clara County political club, and two of its members, Krista Henneman and Carlie Ware. ER-133. Approximately half of the club

14

is composed of members of the Santa Clara County Public Defender's Office, including Henneman and Ware, who, at the time the Complaint was filed, were deputy public defenders. ER-133.

In July 2021, Santa Clara County Deputy Public Defender Sajid Khan announced his candidacy for Santa Clara District Attorney. ER-133. Plaintiffs alleged that they wanted to solicit campaign contributions directly from their coworkers and other county workers for Mr. Khan, but they could not because they feared prosecution under Section 3205. ER-134.

Plaintiffs' complaint named the Attorney General of California as a defendant, and claimed that the application of Section 3205 against them violated the First Amendment and the Equal Protection Clause. ER-170. Plaintiffs sought an injunction forbidding Defendant from enforcing Section 3205 against Plaintiffs or any member of the club and a declaration that Section 3205 is unconstitutional because it violates the First Amendment and the Equal Protection Clause. ER-175.

The parties filed cross-motions for summary judgment based on stipulated facts. ER-132-40. The court granted summary judgment in favor of the Defendant. ER-3-27.[16]

With respect to the First Amendment claim, the court reasoned that section 3205 was a regulation of government employees, subject to the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968). ER-8. That test required the court to balance the "local employees' First Amendment rights against the government's justification for treating them differently from members of the public." ER-10.

The District Court found that "concern about coercion and corruption among local employees is neither speculative nor unreasonable," and that "[p]rohibiting local employees from soliciting campaign contributions from their fellow employees protects everyone's right to make political decisions based on their own beliefs rather than the perceived expediency of currying favor, or out of a fear of repercussions." ER-19. The District Court noted that the Legislature had identified differences between state and local agency employees when it struck the balance between eradicating political

_____

[16] The court had previously denied plaintiffs' request for a temporary restraining order. ER-149-68.

16

corruption and coercion among public employees and the political speech rights of public employees. ER-20. The court concluded that the state had "adequate justification for burdening the political solicitation rights of local employees to protect both employees and the public from coercion and corruption." ER-20. As a result, the court held, Section 3205 did not violate the First Amendment. ER-20.

In evaluating Plaintiffs' equal protection challenge, the District Court found, as threshold matter, that there could be no equal protection violation because "state and local employees are not similarly situated." ER-23-24; ER-26. The court went on to find that Section 3205 "addresses an important government interest and is at least 'closely drawn to avoid unnecessary abridgment of associational freedoms.'" ER-23 (internal citations omitted). California had an important interest in protecting local employees and reducing the existence and appearance of corruption and coercion in the workplace. ER-26. And the statute was closely drawn because it "limit[ed] only a targeted and discrete aspect of local employees' speech rights." ER-26. Local employees are only prohibited from "soliciting partisan political contributions from their co-workers" and are "still permitted to solicit partisan political donations in broad solicitations." ER-26 (citing Cal. Govt.

Code § 3205(c)). As a result, even if heightened scrutiny applied, section 3205 would not violate the Equal Protection Clause. ER-26.

## STANDARD OF REVIEW

An order granting summary judgment is reviewed de novo. *Sandoval v. County of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018). This Court determines, "viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 832 (9th Cir. 2002).

## SUMMARY OF THE ARGUMENT

Plaintiffs challenge Section 3205 not because they believe the State is without power to limit local government employees' political solicitations directed to co-workers, but rather because they believe that if the State does do that, then it must apply the same limitation to state employees.

Plaintiffs' claims necessarily fail. First, Supreme Court authority that is directly on point demonstrates Section 3205 is a constitutionally permissible restriction on the political activity of fundraising by local agency employees in California. These cases also demonstrate that the provision of Section 3205 that imposes a misdemeanor sanction does not violate Plaintiffs' First or Fourteenth Amendment Rights. The California Legislature acted well

18

within its authority in crafting Section 3205 to restrict political fundraising between local agency co-workers. The record before the District Court, including the legislative record, demonstrates that the Legislature had a rational and important interest in limiting the focus of Section 3205 to the conduct of local agency employees. That interest remains as compelling today as when Section 3205 was enacted.

Second, since the regulation is directed to the political activity of government employees, California need only put forth a reasonable interest that outweighs Plaintiffs' interest in directly or indirectly soliciting political contributions from their co-workers. The record demonstrates that California has numerous interests in regulating the conduct of local agency employees, including: ensuring promotion is based on merit and not political reward; keeping the workplace free from corruption and the appearance of corruption, coercion, and undue pressure to donate to a political candidate or cause that the co-worker may not support; and protecting co-workers' First Amendment rights. These interests sharply outweigh Plaintiffs' interest in soliciting contributions from co-workers. Especially given the freedom Plaintiffs have to make partisan political solicitations to members of the public, including their co-workers if such solicitations are part of a larger public campaign.

19

Third, even if the Court were to reject the balancing test described above and instead apply the heightened scrutiny urged by Plaintiffs, the result would be unchanged. California's interests in Section 3205 are important and indeed compelling, and Section 3205 is closely drawn and narrowly tailored to achieve those interests, all while leaving Plaintiffs multiple avenues to solicit the wider public, including their coworkers, for political contributions.

Finally, Plaintiffs' equal protection claim fails for the same reasons their First Amendment claim does. Moreover, Plaintiffs, as local agency employees, are not similarly situated to state employees in relation to California's important interests.

## ARGUMENT

### I. SECTION 3205 DOES NOT VIOLATE THE FIRST AMENDMENT

Section 3205 is a permissible regulation to prevent corruption and protect local government employees by preventing them from being coerced into making political donations, and to protect the public's interest in a government free from cronyism and corruption.

20

A. **Section 3205 Is Constitutional Under the *Curtis*, *Mitchell*, *Letter Carriers*, and *Broadrick* Line of Cases**

1. **The State May Restrict the Solicitation of Political Contributions by Government Employees**

The Supreme Court has repeatedly upheld the ability of federal and state governments to protect the public and government employees by forbidding their employees from soliciting political contributions from coworkers. These decisions have occurred even where the laws at issue drew distinctions among various classes of employees.

In *Ex parte Curtis*, 106 U.S. 371 (1882), the Supreme Court considered a restriction that closely resembled the California law being challenged here. *Curtis* concerned an 1876 act that prohibited all U.S. executive officers or employees not appointed by the president from requesting, giving, or receiving any money or property for political purposes from other executive officers or employees. *Id.* at 372. The plaintiff, who had been convicted of a misdemeanor and jailed for violating the act, challenged the constitutionality of the act. *Id.* at 371. The Court rejected the constitutional challenge because "[t]he evident purpose of Congress" was "to promote efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service." *Id.* at 373. The government could prohibit such solicitations to prevent the coercion and pressure that might force

21

employees to donate against their own political beliefs: "what begins as a request may end as a demand," and "[c]ontributions secured under such circumstances will quite as likely be made to avoid the consequences of the personal displeasure of a superior . . . ." *Id*. at 374.

In *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75 (1947), the Court, following *Curtis*, upheld the Hatch Act of 1939, 5 U.S.C. §§ 7321 *et seq*. The Hatch Act forbade "officers and employees in the executive branch of the Federal Government, with exceptions, from taking 'any active part in political management or in political campaigns.'" *Mitchell*, 330 U.S. at 78. The Supreme Court upheld that prohibition on political activity by balancing the abridgment of rights guaranteed under the First, Fifth, Ninth and Tenth Amendments "against a congressional enactment to protect a democratic society against the supposed evil of political partisanship by employees of the government." *Id.* at 96. The Court upheld Congress's judgment that the Hatch Act was an appropriate measure to "forestall [the] danger" that political activity in the civil service would otherwise "menace the integrity and the competence of the service." *Id.* at 103.

Three decades later, the Supreme Court once again confronted a governmental employer's ability to regulate the political conduct of its employees in a pair of decisions. *U.S. Civil Service Commission v. National*

*Association of Letter Carriers, AFL-CIO*, 413 U.S. 548, 554 (1973);

*Broadrick v. Oklahoma*, 413 U.S. 601, 602 (1973). In *Letter Carriers*, which

concerned another challenge to the Hatch Act's prohibition on taking "an

active part in political management and political campaigns" the Court

reaffirmed the holding in *Mitchell* and concluded that important government

interests outweighed the employees' First Amendment rights to participate

in political campaigns, including political fundraising. 413 U.S. at 556, 560-

61 and 564-67. The Court recognized four important government interests

that outweighed employees' First Amendment rights: (1) limiting partisan

political activities so that government operates "effectively and fairly"

ensuring that employees themselves are to be sufficiently free from improper

influences (*id.* at 564-565); (2) ensuring that "[g]overnment and its

employees in fact avoid practicing political justice" and that they "appear to

the public to be avoiding it" (*id.* at 565); (3) preventing the "[g]overnment

work force [from being] employed to build a powerful, invincible, and

perhaps corrupt political machine" (*id.*); and, (4) ensuring that "employment

and advancement in the Government service not depend on political

performance [while making] sure that Government employees would be free

from pressure and from express or tacit invitation to vote in a certain way or

perform political chores in order to curry favor with their superiors rather than to act out their own beliefs" (*id.* at 566).

In *Broadrick*, published the same day as *Letter Carriers*, the Supreme Court upheld an Oklahoma statute which banned, among other things, classified state employees from soliciting or receiving political contributions from anyone. Plaintiffs challenged the statute on the grounds it was unconstitutionally vague and overbroad and that it violated the Equal Protection Clause. 413 U.S. at 602-606. The Court recognized that Oklahoma had the right to place "even-handed restrictions on the partisan political conduct of state employees" as they "served valid and important state interests, particularly with respect to attracting greater numbers of qualified people by insuring their job security, free from the vicissitudes of the elective process, and by protecting them from 'political extortion'." *Id.* at 606.

The restrictions at issue in *Curtis, Mitchell*, *Letter Carriers,* and *Broadrick* were similar to those in Section 3205 which Plaintiffs now attack. In *Curtis,* the ban prohibited the exchange of political contributions among federal executive officers and employees. *See Curtis,* 106 U.S. at 371. In *Mitchell* and *Letter Carriers* the bans were on covered employees "taking 'any active part in in political management or in political campaigns.'"

*Mitchell,* 330 U.S. at 79; *see also Letter Carriers*, 413 U.S. at 550, 556 (acknowledging that a ban on government employees from "actively participating in fund-raising activities for a partisan candidate" would "unquestionably be valid."). And in *Broadrick* the ban prevented Oklahoma's employees "in the classified service" from, among other things, "directly or indirectly … soliciting or receiving any assessment, subscription or contribution for any political organization, candidacy or other political purpose" and not imposing similar restrictions on state employees in the unclassified service. *Broadrick*, 413 U.S. at 603, n.1.

Section 3205 does not go beyond what the Supreme Court has permitted in these cases—and in many aspects it is less restrictive.

### 2. Supreme Court Precedent Permits Legislatures to Apply Different Regulations to Different Types of Government Employees

Plaintiffs do not contend that the Legislature's goals of preventing coercion and corruption were constitutionally inadequate to justify a prohibition on solicitations of fellow workers. AOB-23-24. Nor do plaintiffs claim that the ban on solicitation of co-workers went too far by restricting conduct unrelated to a legitimate legislative goal. *Id.* Instead, Plaintiffs attack the State for not going far enough. It would have been permissible, Plaintiffs say, for the State to ban all governmental employees from intra-

agency solicitations. In their view, the State violated the First Amendment because Section 3205 banned only local employees from intra-agency solicitations. AOB-23-24.

But in the cases just discussed, the Supreme Court upheld bans on soliciting fellow employees notwithstanding the same sort of selectivity. The ban upheld in *Curtis* applied to federal employees except those appointed by the President. *Curtis,* 106 U.S. at 373. In *Mitchell* and *Letter Carriers*, the Hatch Act barred "officers and employees in the executive branch of the Federal Government, *with exceptions*, from taking 'any active part in political management or in political campaigns.'" *Mitchell*, 330 U.S. at 78 (emphasis added); *see Letter Carriers*, 413 U.S. at 554-55. And in *Broadrick*, the law applied the restrictions to "classified service employees […] while leaving unclassified personnel free from such restrictions." *Broadrick,* 413 U.S. at 837, n.5 (explaining and rejecting the equal protection challenge to the Oklahoma statute). And here, as is discussed below, there is good reason for treating local and state employees differently. *See infra* pp. 40-43.

26

### 3. Section 3205's Criminal Penalty Does Not Make the Law Unconstitutional

Plaintiffs argue that the inclusion of a criminal penalty in section 3205 makes it unconstitutional. AOB-31-34. But the statutes upheld in both *Curtis* and *Broadrick* also carried possible criminal penalties. *See Curtis*, 106 U.S. at 371; *Broadrick*, 413 U.S. at 606. Indeed, *Curtis* involved a specific challenge to that plaintiff's misdemeanor conviction, and the Supreme Court rejected arguments that those criminal penalties made the statute unconstitutional. *See Curtis*, 106 U.S. at 374.

*Broadrick* concluded that under the analysis applied in *Letter Carriers*, there was "no question that § 818 is valid at least insofar as it forbids classified employees from: soliciting contributions for partisan candidates …" *Id.* at 616. The presence of criminal sanctions neither altered nor impacted the application of the balancing of the state's interest in treating the plaintiffs differently than other members of the public against plaintiffs' rights to exercise the sanctioned conduct in *Broadrick* or *Curtis,* nor was it held to require some heightened form of scrutiny, and it should not do so here. And more broadly, Plaintiffs' argument about criminal penalties would not mean that the *prohibition* in Section 3205(a) is invalid. It would at most restrict the ability to bring criminal cases under section 3205(d)—leaving

intact the ability to impose any civil or employment sanctions that may exist under other law.

### B. Section 3205 Is Constitutional Under the Applicable *Pickering* Balancing

The close resemblance between Section 3205 and the statutes the Supreme Court has upheld in the line of cases specifically addressing solicitations by governmental employees is itself enough to resolve this case. But as the District Court recognized, Section 3205 also passes muster under the test that governs regulations of government employees' speech more generally: the test from *Pickering v. Board of Education,* 391 U.S. 563 (1968); *see* ER-8; ER-20. As the Supreme Court has stated, "*Pickering* provides the framework for analyzing whether the employee's interest or the government's interest should prevail in cases where the government seeks to curtail the speech of its employees." *Lane v. Franks*, 573 U.S. 228, 236 (2014).

In *Pickering*, a teacher challenged the Illinois' Supreme Court's decision to uphold his dismissal from employment for publishing a letter that was critical of the School Board. *Pickering*, 391 U.S. at 564-565. In concluding that the school board had violated the teacher's First Amendment rights, the Supreme Court held that the teacher's interest in speaking out to

28

the public on a matter of public interest outweighed the stated interest of having school employees demonstrate loyalty to their superiors. *Pickering,* 391 U.S. 573.

*Pickering* recognized that the government "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering*, 391 U.S. at 568. Thus, "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). The challenge for the Court "is to arrive at a balance between the interests of the [employee], as a citizen in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568.

Under this *Pickering* balancing, if the speech at issue was made as a citizen on a matter of public concern, then the court must determine if there is an adequate justification for the government in treating the employee differently from other members of the public. *Garcetti*, 547 U.S. at 418. There is no dispute that the speech at issue here is that of a government employee acting as a citizen on a matter of public concern. The analysis,

29

therefore, turns to the second part of the *Pickering* balancing—determining if California has an adequate justification for treating Plaintiffs differently from members of the public, or as Plaintiffs argue from state employees. *See Garcetti*, 547 U.S. at 418-20.

### 1. The State's Interests Outweigh the Limited Burden Section 3205 Places on Plaintiffs

Section 3205 is constitutional under the *Pickering* balancing because the important governmental interests it advances outweigh the limited burden placed on Plaintiffs and local agency employees.

**a.** Section 3205 advances California's interest that "employment and advancement in the Government service not depend on political performance [while also ensuring] that local agency area employees are free from pressure and from express or tacit invitation to vote in a certain way or perform political chores in order to curry favor with their superiors rather than to act out their own beliefs." *Letter Carriers*, 413 U.S. at 566. Concerns were expressed by and to the California Legislature regarding the potential for coercion created by partisan political solicitations among government agency co-workers. *See* Cal. Gov't Code § 3201 ("The Legislature finds political activities of public employees are of significant statewide concern."); ER-72-74 (The SPB recognized that the statutory prohibitions

enacted in 1963 were "designed to preclude the growth of corrupt and coercive practices" and "helped ensure civil service" was "free of the debilitating effects of political influence and patronage" and that such patronage "is far from being an historical curiosity in this country."); ER-104 (City of Los Angeles objected to the removal of prohibition on local employees because it "affords the individual employee sufficient freedom to express his or her own views" and is "very important as a protection for an employee from undue pressures, and as a protection from the patronage or spoils problems of the past."); ER-119-20; Cal. Bill Analysis, S.B. 1308, 1995-1996 Session (July 12, 1995) (recognizing that "neither [governmental] employees nor officers should be coerced into contributions for fear that employment may be in jeopardy if they do not contribute."). These concerns were strong enough that the Legislature enacted and amended provisions to limit political activity for government employees four times since 1945. ER-111-13; ER 119-20; ER 130-31.

Section 3205 also advances the interest in ensuring that government and its employees both "in fact avoid practicing political justice" and "appear to the public to be avoiding it." *Letter Carriers*, 413 U.S. at 565. The importance of these interests were identified by local agencies who objected to the proposed removal of the solicitation ban on local agency

31

employees. *See* ER-104 (City of Los Angeles noted that "the existing provisions are vital to ensure to the public that its local government functions are being carried out without any taint of political partisanship."); ER-86 (City of Sacramento did not want to permit "activity by a public employee which could disparage his employer in the eyes of the public by associating it with the political interests of the employee.")

Perhaps most importantly, the statute advances local employees' own First Amendment interests in not being pressured or compelled, by the implicit threat of job consequences, into supporting political candidates and speech that an employee in fact disapproves of. *See Letter Carriers*, 413 U.S. at 564-67. The Supreme Court has recognized the danger that government employees might face pressure to support "political candidates not of the worker's own choice … in violation of [their] fundamental constitutional rights." *Connick v. Myers,* 461 U.S. 138, 149 (1983).

The importance of this interest cannot be overstated. As the Supreme Court has noted, "[t]he cost of the practice of political patronage is the restraint it places on the freedoms of belief and association" of government employees which are "the core of those activities protected by the First Amendment." *Elrod v. Burns,* 427 U.S. 347, 355 (1976). Under these patronage systems the "financial and campaign assistance" that a civil

service employee is "induced to provide to another party furthers the advancement of that party's policies to the detriment of his party's views and ultimately his own beliefs." *Id*. (Internal citations omitted.); *Rutan v. Republican Party*, 497 U.S. 62, 66-67 (1990) (the promotion, recall, and hiring decisions for low-level civil service employees based on their political affiliation violated their First Amendment freedom of association).

**b.** In contrast, the burden on Plaintiffs and other local governmental employees is modest. Plaintiffs can freely donate to any candidate, party, or political cause. Plaintiffs can also speak freely—to the media, to their coworkers or to anyone else—about candidates and political causes and interests. They can join and lead political organizations, and can solicit others to donate to candidates and political causes. And those solicitations may be addressed to segments of the public that include coworkers. Cal. Gov't Code § 3205(c); ER-134-35. The only thing Plaintiffs may not do under Section 3205 is to intentionally target their co-workers with a partisan political solicitation—precisely the group that needs protection from such political solicitations. *See, e.g. Connick,* 461 U.S. at 149 (recognizing that government employees might face pressure to support "political candidates not of the worker's own choice …in violation of [their] fundamental constitutional rights.")

33

The carve-out provided for in Section 3205(c) is not an insignificant exception to the solicitation ban. In practice it allows Plaintiffs to reach co-workers who would want to make contributions supporting Plaintiffs' candidate or causes without putting the type of coercive pressure on co-workers that a partisan political fundraising campaign would.

### 2.    Plaintiffs' Contrary Arguments Are Incorrect

Plaintiffs' arguments against the law's constitutionality under *Pickering* are incorrect. First, Plaintiffs argue that the State's justifications are insufficiently supported by specific evidence in the legislative record or elsewhere about the necessity for the law's application to just local employees. Plaintiffs go further and assert there is *no* evidence in the record to support the distinction made in Section 3205. AOB-38; AOB-42. They contend that this violates a requirement under *United States v. National Treasury Employees Union,* 513 U.S. 454 (1995) ("*NTEU*") to "demonstrate that the recited harms are real." AOB-36-37.

But Plaintiffs misread *NTEU*—it does not require that the government provide data or other evidence to demonstrate that Section 3205 has had positive impact on local agencies and their employees. Instead, courts consider the nexus between the challenged law and the government employment. *NTEU*, 513 U.S. at 468-74 (broad ban on government

34

employees receiving payment for speeches and articles lacked a "nexus" between the payer or the subject matter and the speaker's duties to support a genuine concern about corruption or the appearance of impropriety.)

Here, Section 3205's restrictions have a direct connection to the workplace. This is in stark contrast to the regulation at issue in *NTEU* which prohibited speech that had nothing to do with workplace conduct or activities—it banned federal employees from receiving honoraria payments for *any* speech, appearance, or article while employed by the federal government. *NTEU,* 513 U.S. at 462-63.

Plaintiffs also argue that the statute either fails to advance its goal or somehow burdens Plaintiffs' rights to solicit donations because it applies not only to them, but to also to other county workers who might wish to solicit campaign contributions from county employees in separate departments. AOB-45-46. But *these* plaintiffs are not in that situation. *See* ER-142; ER 146-47; ER 171-72 (Plaintiffs' Complaint and supporting declarations allege that they wished to solicit "campaign contributions to support the candidacy" of a "friend … who is a public defender" from "other county employees, particularly other public defenders.") These claims cannot assist plaintiffs' case. Plaintiffs have not been clear about whether they challenge the statute only as-applied to them, or facially. *See* ER-5; ER-149. ("Unlike

at the TRO stage, Plaintiffs note that their requested injunction would prohibit the enforcement of § 3205 against *any* local employees, and not just Plaintiffs.") But under either formulation, plaintiffs in federal court generally have standing only to assert their own rights—not the rights of others. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties'"). An exception exists for First Amendment challenges, where a plaintiff demonstrates a "'substantial number' of its applications are unconstitutional, 'judged in relation to [its] plainly legitimate sweep.'" *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 449-50 and n.6 (2008). But here, Plaintiffs have not even asserted—let alone proven—that to be the case.

Plaintiffs also argue that the State's interest is not served by Section 3205 because Plaintiffs do not intend to solicit contributions from subordinates. But there can also be coercive pressure in solicitations from peers, not just from superiors. The District Court recognized that "fellow employees may well feel burdened, intimidated, or even threatened by solicitations from their boss, or *from co-workers who could end up being their boss (or their boss's lieutenant) tomorrow.*" (Emphasis added.) ER-22-23 (citing *NTEU,* 513 U.S. at 475, n.21; *see also Letter Carriers*, 413 U.S. at

566–67. Indeed, this latter scenario would have played out here, as one of the Plaintiffs was promoted and is now a supervisor at the Santa Clara County Public Defenders' Office. AOB-14 n.1.

### C. Heightened Scrutiny Does Not Apply, but Section 3205 Would Pass Such Scrutiny

Plaintiffs argue that some level of higher scrutiny, such as "close" scrutiny, applies instead of *Pickering* balancing. AOB-21-29. That claim is incorrect, but if some form of higher scrutiny does apply, Section 3205 would pass such scrutiny.

#### 1. Plaintiffs' Arguments that *Pickering* Does Not Apply, and that Some Other Heightened Scrutiny Test Applies, Are Incorrect

First, Plaintiffs argue that the correct framework comes not from cases regulating governmental-employee's political activity such as *Broadrick* and *Letter Carriers*, and not from cases regulating employee speech such as *Pickering* and *Garcetti*, but rather from cases addressing general and broad restrictions on campaign contributions or campaign spending, beginning with *McCutcheon v. FEC,* 572 U.S. 185 (2014). AOB-22; AOB-24-27.

None of those cases address the implications of government employment and the factors involved in evaluating those implications.

In addition, those cases focus on balancing the rights of the donor to political causes against the government's general, but important interest, in anti-corruption. For example, in *Buckley v. Valeo*, 424 U.S. 1, 26 (1976), the Court found "the Act's primary purpose—to limit the actuality and appearance of corruption" was sufficient justification for the $1,000 contribution limitation." *See also McCutcheon,* 572 U.S. at 206 (recognizing the interest in preventing corruption in the electoral process did not justify the overly broad restrictions placed on individual or organizations rights to contribute to candidates of their choosing); *Citizens United v. FEC,* 558 U.S. 310, 348-361 (2010) (compared the rights of corporations to contribute to political causes against the government's interests in "antidistortion" and "preventing corruption or its appearance").

Here, Section 3205 balances the speech interests of the solicitor (Plaintiffs) not only against the general interest of combatting corruption and the appearance of corruption but against the individual speech and association interests of the solicited (the targeted co-workers). The restriction protects the coworkers' right to freely exercise their own political choices without the fear that they will suffer employment consequences from turning down a solicitation from a boss, a political or social ally of

their boss—or co-workers who could be their boss tomorrow. *See*, *e.g.,*
*NTEU*, 513 U.S. at 472 n.21; *Letter Carriers*, 413 U.S. at 566-67.

Moreover, none of the general campaign-finance cases Plaintiffs
discuss purport to overrule the Supreme Court's specific line of cases
involving political solicitations by governmental workers, such as *Curtis,*
*Mitchell, Broadrick*, and *Letter Carriers*. Indeed the Supreme Court's more
general campaign-finance cases have noted that they did not address the
quite different issues raised by restrictions applying only to governmental
employees or contractors. *See Citizens United,* 558 U.S. at 341 (noting that
Supreme Court precedent "has upheld a narrow class of speech restrictions
that operate to the disadvantage of [government employees]," citing to a
series of cases including *Letter Carriers*); *see also Buckley,* 424 U.S. at 27
(recognizing that *Letter Carriers* "found that the danger to 'fair and
effective government' posed by partisan political conduct … was a
sufficiently important concern to justify broad restrictions on the employees'
right of partisan political association").

Finally, Plaintiffs also argue that *Pickering* balancing cannot apply to
Section 3205 because it "has never before been applied to evaluate the
constitutionality of a criminal law." AOB-31. But the Supreme Court has
said that "*Pickering* provides the framework for analyzing … cases where

39

the government seeks to curtail the speech of its employees." *Lane*, 573 U.S. at 236. And the Supreme Court has never stated that *Pickering* does not apply to such laws if they happen to include criminal sanctions. Plaintiffs have not pointed to any decision in any court that refused to apply *Pickering* balancing to an employee restriction because the regulation at issue imposed a criminal penalty. In fact, as *Pickering*'s predecessor cases (such as *Curtis*) and successor cases (such as *Broadrick*) show, governmental regulations of *employee speech* in matters that affect the workplace stand on fundamentally different ground than regulation of the public regardless of whether criminal penalties attach. *Compare Curtis*, 106 U.S. 371, and *Broadrick*, 413 U.S. 601.

### 2. The State's Different Treatment of State and Local Employees Is Justified and Supported in the Record

Plaintiffs' main argument is that, however justified the restrictions on employees of local governments may be, they cannot survive if the State does not also impose identical requirements on employees of state agencies. That is incorrect.

First, as discussed above, the Supreme Court has upheld numerous analogous statutes imposing restrictions on political activities including solicitation for some categories of governmental employees but not others.

40

Under these precedents, considerable deference is given to legislative bodies in drawing such distinctions. *See, e.g., Curtis*, 106 U.S. at 374; *Broadrick*, 413 U.S. at 607-608, n.5 (citing *McGowan v. Maryland*, 366 U.S. 420 (1961)); *Mitchell,* 370 U.S. at 102; *see generally Williams-Yulee v. Fla. Bar,* 575 U.S. 433, 449 (2015) ("the First Amendment imposes no freestanding 'underinclusiveness limitation'" and "[a] State need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns").

Second, state employees have less need for the kind of protection under Section 3205 because, compared to local agencies, the state government offers stronger and more uniform oversight of employment related decisions with respect to state employees.

When deciding to change the framework governing solicitation by state and local government workers in 1976, the California Legislature responded to continued concerns about the need for such regulation at the local level. *See* ER-15-17; ER-64-68; ER-108-09. The Legislature was aware of vastly differing substantive and procedural rules among the local agencies when it came to regulating employee conduct and political activity in the workplace. *See* ER-16-17; ER-125. In addition, the cities of Los Angeles and Sacramento also expressed serious concerns about removing the statewide

prohibition on local agency employees soliciting political contributions from their co-workers as that prohibition protected city employees from undue pressure and "the patronage or spoils problems of the past." ER-17; ER-104.

Moreover, the Legislature acknowledged that State employees were in a quite different situation than local employees—because the administration of state government employment provided sufficient "precautions and protections" to prevent retaliation and the politicization of the state civil service. ER-98; ER-105. Oversight of state employees was also being provided by the SPB to ensure "that state employment is based on merit and free of political patronage."[17] Thus, as the District Court recognized, there was sufficient evidence that the Legislature had a reasoned interest in maintaining the solicitation limitation on local employees. *See* ER-15-17.

This distinction is, if anything, even more pronounced today. In 1981, the California Department of Personnel Administration began performing centralized personnel functions for state employees and managing the non-merit aspects of state civil service employment. In 2012, those functions—monitoring state employment practices and the management of state civil

---

[17] *See*, California State Personal Board, Message from the Executive Officer – www.spb.ca.gov/about/executive_officer.aspx (lasted visited Sep. 8, 2022).

service employees—continued under CalHR. *See* ER-136-37. The oversight

provided by CalHR and the organization of state civil service employment

helps to ensure that state civil service continues to be a merit based system

that is free of political patronage—making the Section 3205 restrictions

unnecessary as to state employees.

### 3. Plaintiffs' Arguments Are Unconvincing

Plaintiffs offer a variety of arguments in response, but none is

convincing.

First, Plaintiffs argue that the State's reasons for treating employees

differently based on their type of governmental employer are insufficient

because they are not justified by "substantial evidence in the [legislative]

record." AOB-37. First and foremost, their conclusion is simply incorrect.

As is discussed above, there is ample evidence in the record to support a

finding that different treatment of state and local employees under Section

3205 was a reasoned and rational decision by the legislature.

In addition, the standard set forth by Plaintiffs is not the correct

standard for evaluating the record to determine if there is sufficient

justification for legislation. In support of Plaintiffs' standard, Plaintiffs cite

*Minority Television Project, Inc. v. FCC*, 676 F.3d 869, 880 (9th Cir. 2012)

and *Harwin v. Goleta Water District,* 953 F.2d 488, 491 (9th Cir. 1991). But neither case supports plaintiffs' argument.

As this Court has recognized, the *Minority Television* opinion that Plaintiffs cite was superseded by an en banc decision and is not citable precedent. *See Minority TV, Inc. v. FCC*, 704 F.3d 1009 (9th Cir. 2012). The subsequent en banc decision applied a standard quite different than what Plaintiffs propose. As the en banc court recognized, "[n]either due process nor the First Amendment requires legislation to be supported by committee reports, floor debates, or even consideration, but only by a vote." *Minority TV Project, Inc. v. FCC,* 736 F.3d 1192, 1199 (9th Cir. 2013) (en banc) ("*Minority TV II*") (citing *Sable Comm. of Cal., Inc. v. FCC*, 492 U.S. 115, 133 (1989) (Scalia, J. concurring)).

*Harwin,* in turn, does not refer to a need for "substantial evidence." Indeed, that case did not discuss any evidentiary standard. Rather, *Harwin* concluded that a local ordinance that prevented water board members from reviewing applications from certain campaign contributors could not be sustained because "there is no evidence in the record about the impact of disqualification on the representation of the Water District's residents" to support a finding that the ordinance in question prevented corruption or the appearance of corruption. *Harwin*, 704 F.3d at 491. Given that there is a

44

record in support of the distinction made by Section 3205, as discussed

below, *Harwin* is inapposite.

Plaintiffs argue that the legislative record offers no support for the

distinction drawn between state and local employees by Section 3205. AOB-

37-44.[18] Plaintiffs assert that the lack of this record demonstrates that the

Legislature acted irrationally when making this distinction, and that the

change made to the legislation that ultimately lead to Section 3205 "was the

result of legislative favoritism or horse-trading." AOB-38. Plaintiffs'

conclusions, and arguments in support of it fail for a number of reasons.

First, Plaintiffs rely on an incorrect standard of evidence that does not

exist and is not supported by case law. As discussed above, Plaintiffs'

---

[18] Plaintiffs evidently believe that these factual differences between state and local employees cannot be considered because the specific administrative mechanisms governing state employees were not explicitly listed in the legislative history. But California's Legislature can be expected to be familiar with the oversight mechanisms for state employees that it has itself enacted. *See* Cal. Const., art. VII, §§ 2-3 (creation and role of State Personnel Board); *see also* Cal. Gov't Code §§ 19815-19999.7 and Cal. Code Regs., tit. 2, §§ 599.600-599.995 (2022). And in evaluating plaintiffs' claim, this court is not limited to justifications asserted at the time of enactment. *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 70-71 (1983) (Reliance on interests not asserted at the time a statute was enacted "is permissible since the insufficiency of the original motivation does not diminish other interests that the restriction may now serve."); *Minority TV II*, 736 F.3d at 1199 ("As a matter of course, in multiple First Amendment cases, the Court has looked beyond the record before Congress at the time of enactment.").

purported requirement that there must be "substantial evidence in the [legislative] record" is a standard rejected by the Ninth Circuit. *See Minority TV II*, 736 F.3d at 1199. Furthermore, Plaintiffs' assertion that the record is "devoid of support for the distinction" made as to the differences between state and local employees simply ignores the record.

To reach their conclusion, Plaintiffs rely primarily on a single comment by Marty Morgenstern, an advisor to the Governor, stating that *he* was not aware of a reason to treat state and local employees differently. AOB-38-42 (citing ER-100). But the mere existence of such disagreement does not mean that the Legislature was wrong in the conclusions that it in fact drew. *Cf.* The Statistics, 135 Harv. L. Rev. 491, 496 (2021) (noting that 56% of Supreme Court decisions in the 2021 Term had dissents). The Legislature was well equipped to evaluate the oversight mechanisms made possible by the laws it had previously passed and to determine that local employees needed this extra level of protection. In addition evidence submitted by the state regarding its interests in Section 3205 and the distinctions it made between state and local employees is evidence for the Court to consider. *Minority TV II,* 736 F.3d at 1198 ("[f]ollowing the Supreme Court's lead, we look to 'the evidence, before Congress and then the further evidence presented to the District Court'").

46

As Plaintiffs acknowledge, state agencies are charged, under Section 19990, to craft their own rules defining conduct that is incompatible with their mission and with continued employment by that agency. But under Section 19990, those rules must be submitted to and approved by CalHR before they can take effect. [19] *See* Cal. Gov't. Code § 19990. This centralized mechanism ensures the adequacy of each state agency's protections for state employees' civil and constitutional rights. In addition to this provision, all of the oversight put in place to monitor state employees and the operation of state government serve to prevent corruption, the appearance of corruption, and protect state employees and their rights. *See supra* pp. 3-9, 40-43.

No similar mechanism operates for local governments. *See supra* pp. 6-9, 40-43. Other than Section 3205, and the other provisions found in Chapter 9.5 of the California Government Code, there are no uniform regulations on the conduct of political activity by local agency employees to protect their rights and prevent coercion, corruption and the appearance of corruption. *See* Cal. Gov't. Code §§ 3201 and 3207. California's 3,500 local agencies (ER-135) are each responsible for managing their own personnel.

---

[19] The predecessor to Section 19990 is Section 19251 which was repealed and reenacted as Section 19990 in 1981. *See* Cal. Gov't Code § 19990.

47

As the district court recognized, "the level of oversight for state and local employees is significantly different."  ER-24.

Local agencies also have no equivalent to the "single entity that oversees state employees." *Id.; see supra* pp. 8-9. Without the basic limitations and uniformity provided by Section 3205, each local agency would be forced to adopt their own rules about the specific circumstances in which a solicitation to coworkers was deemed problematic. Some agencies might be unable or unwilling to do, given their small size, limited HR- and legal-resources, and other agencies, even large ones may face specific governance limitations.  *See* ER-125 (noting Los Angeles County voters' rejection of charter amendment to eliminate extensive restrictions on County employees political activity, and Los Angeles City's Charter total lack of restrictions on the political activity of city employees); *supra* pp. 6-9, 40-43. Others might adopt such rules but be unable to enforce them, since they are so small that they could not realistically maintain the requisite administrative apparatus. And if local agencies did each adopt their own rules, the result would be dizzying variety of different rules and regulations—with employees of various cities, counties, and special districts subject to quite different restraints even in the very same geographic area.  *See, e.g.,* ER-125-26. And the lack of centralized organizations to oversee hiring, firing,

48

promotions, and sanctions would mean that violations at the local government level might not be detected and addressed. The result would not be more uniformity and less disparate treatment of governmental workers—it would be the opposite.

In response to these concerns about uniformity and oversight, Plaintiffs argue that the differences in uniformity between state and local employee oversight and their differences in scale cannot support a finding that Section 3205's selective ban is supported by a strong state interest. AOB-44-47. In support Plaintiffs offer speculation on alternative ways for the Legislature to allocate funds to CalHR for enforcement of anti-corruption laws among state versus local employees. AOB-46. This argument misses the point. First, the point about uniformity is that there is a difference between state and local agencies. CalHr and its uniform oversight helps to ensure that the type of corruption and coercion that Section 3205 addresses for local agencies does not occur at the state level. There is no such oversight, absent Section 3205, for local agencies. Second, as to Plaintiffs hypothetical about increased funding for CalHR to address corruption in local agencies if Section 3205 was found unconstitutional, or otherwise repealed, there would be no anti-corruption laws for local agency employees that could be enforced to address the corruption and coercion that Section 3205 was passed to prevent.

49

In addition, even if Plaintiffs' speculative schemes could address the harms targeted by Section 3205, an alternate hypothetical that might also address a specified problem in a narrow manner does not invalidate a statute. *Minority TV II,* 736 at 1199 (noting that the "fundamental principles of separation of powers" does not permit the court to "rewrite the legislation, ignore the [legislative] evidence, and substitute … its own policy judgment for that of [the legislature].") The test is, under the "close scrutiny" advocated for by Plaintiffs, that Section 3205 will be upheld if "the State demonstrates a sufficiently important interest and employs a means closely drawn to avoid unnecessary abridgment of associational freedoms." *McCutcheon*, 572 U.S. at 197; *see infra* pp. 51-53. It is not whether there was or is a purportedly better way to do it.

Finally, Plaintiffs argue, based on *Citizens United,* 558 U.S. at 340, that it is impermissible to apply to one set of governmental workers restrictions that do not apply to another. AOB-24. But *Citizens United* did not purport to overrule the Supreme Court's line of cases upholding such selective laws regarding political restrictions on governmental employees. Rather, *Citizens United* cited and distinguished cases, including *Letter Carriers*, that "upheld a narrow class of speech restrictions that operate to the disadvantage of

certain persons . . . based on an interest in allowing governmental entities to perform their functions." *Citizens United,* 558 U.S. at 341.

### 4.  Section 3205 Would Pass "Close" Scrutiny

In any event, Section 3205 would still survive even if this Court were to apply the "close scrutiny" standard Plaintiffs propose. AOB 23-25 (discussing "close scrutiny" standard of *McCutcheon*, 572 U.S. at 191). Under that standard, restrictions on political contributions must be "closely drawn to avoid unnecessary abridgment of associational freedoms" and they must address a "sufficiently important interest." *McCutcheon*, 572 U.S. at 197 and 199. As the District Court recognized, and as summarized below, those requirements would be met here. ER-23.

Section 3205 serves interests that Supreme Court precedent identifies as important—such as protecting the political beliefs and First Amendment rights of speech and association of local employees, curbing corruption, and preventing the appearance of corruption. *See*, *e.g.*, *Letter Carriers*, 413 U.S. at 566-67; *Broadrick*, 413 U.S. at 606; *Mitchell*, 330 U.S. at 96-98; *Connick*, 461 U.S. at 149. And as the District Court recognized, Section 3205's restrictions are "closely drawn." ER-15. The political solicitation ban prohibits only a small slice of political activity—targeting only partisan political solicitations to co-workers—while leaving open targeted partisan

political solicitation to all who are not co-workers, and creating an exception that permits a broader public appeal that can include co-workers. Cal. Gov't Code § 3205(c). Indeed, the restrictions here are significantly less restrictive than ones the Supreme Court has upheld in the past. *See*, *e.g., Mitchell,* 330 U.S. at 78 and *Letter Carriers,* 413 U.S. at 556 (approving prohibitions on "partisan political activity" and acknowledging that "actively participating in in fund-raising activities for a partisan candidate or political party" would "unquestionably be valid."); *Broadrick,* 413 U.S. at 605-606 (upholding a state statute prohibiting "directly or indirectly … soliciting or receiving *any* assessment … or contribution for any political organization, candidacy or other political purpose.") (Emphasis added.)

Plaintiffs also argue that because Section 3205 makes a distinction between the conduct of state and local employees this Court must "closely scrutinize" this distinction. AOB-24-27. Plaintiffs' rely on cases analyzing First Amendment and equal protection claims in its discussion supporting the application of close scrutiny of the distinction made between state and local employees. Plaintiffs argue *Citizens United* and *Service Employees Int'l Union, etc. v. Fair Political Practices Com.,* 955 F.2d 1312 (9th Cir. 1992) (*"SEIU"*) reviewed similarly impermissible classifications under the First Amendment and applied a heightened scrutiny to evaluate the

distinction. But as discussed previously, these cases are inapposite. But even if the Court were to apply these standards to review Section 3205 in the First Amendment context the Court would only need to find "the discrimination is itself necessary to achieve a substantial government interest." *SEIU*, 955 F.2d at 1319. Here, California's interest in preventing corruption and the appearance of corruption is a recognized "substantial government interest." *Id.* at 1321. The challenge is to determine if the interest is served by the discriminatory statute. *Id.* As explained above, California has legitimate reasons for treating state employees differently than local employees for purposes of Section 3205—reasons supported by both the legislative record, and by the record provided to the District Court (and this Court) about the differences between state and local employees. Thus, there is "an appropriate governmental interest suitably furthered by the differential treatment." *Id.* And thus, Section 3205 does not run afoul of the First Amendment.

## II.  SECTION 3205 DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE

Plaintiffs' second claim is that Section 3205 violates the Equal Protection Clause because of the State's different treatment of local- versus state-government employees.  They are incorrect.

*1.*  As an initial matter, the Supreme Court has rejected the very type of equal protection argument that Plaintiffs assert here. The plaintiffs in *Mitchell* challenged the Hatch Act on First and Fifth Amendment grounds, arguing in support of the later challenge that the statute's distinction between employees of the executive branch (whose political activities were restricted) and exempted executive employees (whose activities were not) violated equal protection because it discriminated as between government employees. *Mitchell,* 330 U.S. at 83, n. 12; *see generally Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2  (1975) ("This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment."). The Supreme Court rejected the argument and upheld the law, concluding that such distinctions were "differences in detail so far as the constitutional power under review is concerned." *Mitchell,* 330 U.S. at 102.

The plaintiffs in *Broadrick* also contended that the Equal Protection Clause of the Fourteenth Amendment prohibited an Oklahoma law's distinction drawn between two categories of government employees with respect to their permitted political activities *See Broadrick,* 413 U.S. at 607, n.5. The Supreme Court rejected that argument, upholding the state legislature's "leeway in determining which of its employee positions require

54

restrictions on partisan political activity." *Id.* Plaintiffs' equal protection claim cannot survive these cases: As the Seventh Circuit recognized, *Mitchell* and *Broadrick* entirely "disposed of" arguments that such distinctions violate the equal protection principles of the Fifth or Fourteenth Amendments. *Smith v. U.S. Civ. Serv. Comm'n*, 520 F.2d 731, 735 (7th Cir. 1975).

In *Clements v. Fashing*, 457 U.S. 957 (1982), the Supreme Court recognized that legislatures can target and regulate some activity while leaving other activity unregulated because the "[t]he Equal Protection Clause allows the State to regulate 'one step at a time, addressing itself to the phase of the problem which seems most acute.'" *Id.* at 969 (citation omitted). This reasoning applies equally here to support the rejection of Plaintiffs' argument that Section 3205 is unconstitutionally discriminatory.

More generally, there is a fundamental flaw in Plaintiffs' argument. The decision Plaintiffs attack—not to apply section 3205's restrictions to state employees—evinces not discrimination but the Legislature's care not to impede speech more broadly than necessary. If applying the restrictions to state employees would not further protect state employees from political coercion, then there is no reason their speech should be restricted.

55

*2.* Plaintiffs' argument fails as well because equal protection requires only that people be treated similarly to others that are similarly situated. *Arizona Dream Act Coal. v. Brewer,* 757 F.3d 1053, 1063 (9th Cir. 2014). "The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike'" and the "Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Plyer v. Doe,* 457 U.S. 202, 216 (1982) (citations omitted). "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States." *Id.* The District Court undertook the task of determining whether the legislature made a determination as to the differences between state and local employees for purposes of Section 3205. The District Court found the legislature had, and that the determination was that they were not similarly situated. Because local and state employees are not similarly situated, their different treatment is constitutional. *See supra* pp. 3-9, 40-43 (explaining differences in administrative mechanisms to protect state versus local employees from political patronage). Thus the equal protection inquiry need go no further, as the claim fails because a necessary element of the claim, that relevant parties be similarly situated, is not present.

**3**.  In any event, the State's decision to enact special provisions for local governmental employees passes the applicable equal protection test. Under the rationality review standard, equal protection "is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective," and a "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan*, 366 U.S. at 425-426.

As explained above, the State's decision here is justified by significant concerns regarding the impact of political solicitations within local agencies, the inability of many local agencies in regulating workplace conduct, the lack of uniformity in regulations on local agency employee conduct, the well-monitored state civil service system, uniform oversight of state employees and employee conduct, strong statue unions that protect the interests of state employees and lack of such protections at the local agency level.  *See supra* pp. 3-9, 40-43.

Plaintiffs argue that because Section 3205 infringes upon a fundamental right, namely Plaintiffs' First Amendment right to free speech, this Court must apply higher scrutiny than the rational basis test outlined in *McGowan*, even though Plaintiffs and other local agency employees are not protected classes-and are subject to heightened regulation as government employees.

57

AOB-21-29. Since Plaintiffs' argument rests mainly on the free-speech implications of the classification, presumably the resulting standard of scrutiny would involve the same balancing as the applicable First Amendment *Pickering* balancing. And the distinction here meets that standard, as we have shown above. Indeed, the distinction would withstand even higher levels of scrutiny.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court should be affirmed.

Dated:  September 9, 2022          Respectfully submitted,


ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK BECKINGTON
Supervising Deputy Attorney General


/S/ *KEITH L. WURSTER*


KEITH L. WURSTER
Deputy Attorney General
*Attorneys for Defendant-Appellee*

SA2022302408
36541667.docx

58

22-15323

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**PROGRESSIVE DEMOCRATS FOR SOCIAL JUSTICE, KRISTA HENNEMAN, CARLIE WARE,**

Plaintiffs,

**v.**

**ROB BONTA, in his official capacity as Attorney General of the State of California,**

Defendants.

## STATEMENT OF RELATED CASES

No other cases in this Court are deemed related to this case pursuant to Circuit Rule 28-2.6.

Dated:  September 9, 2022          Respectfully submitted,

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK BECKINGTON
Supervising Deputy Attorney General

/S/ *KEITH L. WURSTER*

KEITH L. WURSTER
Deputy Attorney General
*Attorneys for Defendant-Appellee*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 22-15323

I am the attorney or self-represented party.

**This brief contains** 11,799 **words,** excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____ .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Keith L. Wurster    **Date** Sep 9, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15.  Certificate of Service for Electronic Filing

**9th Cir. Case Number(s)**   22-15323

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
**[X]**   I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
**[ ]**   I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

| Jason Harrow<br>Charles Gerstein<br>GERSTEIN HARROW LLP<br>3243B S. La Cienega Blvd.<br>Los Angeles, CA 90016<br>jason@gerstein-harrow.com | Charles Gerstein<br>GERSTEIN HARROW LLP<br>810 7th Street NE, Suite 301<br>Washington, DC 20002<br>charlie@gerstein-harrow.com |
|---|---|

**Description of document(s)** *(required for all documents)*:

| APPELLEE'S BRIEF |
|---|

s/  *C. McCartney*

C. McCartney                                          September 9, 2022

SA2022302408
36541257.docx